UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-09129-KS Date: August 26, 2026

Title *Jose Adalberto Mancia Alvarez v. Ernesto Santacruz Jr et al.*

Present: The Honorable: Karen L. Stevenson, Chief U.S. Magistrate Judge

| Kerri Hays | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) ORDER GRANTING PETITIONER'S "APPLICATION FOR EX PARTE TEMPORARY RESTRAINING ORDER" [DKT. NO. 3]**

## PROCEDURAL BACKGROUND

The Court is in receipt of Petitioner's "Application for Ex Parte Temporary Restraining Order" ("TRO Application"), filed on August 17, 2026. (Dkt. No. 3.) This action has been fully consented to in accordance with General Order 26-05, and this case is proceeding before the assigned Chief Magistrate Judge. (Dkt. Nos. 6, 8.) On August 18, 2026, the Court ordered briefing on the TRO Application. (Dkt. No. 7.) Respondents have not entered an appearance in this case and did not file any opposition to the TRO Application. On August 24, 2026, Petitioner's counsel filed a Reply in support of the TRO Application arguing that "[b]ecause Respondents have not opposed the [TRO] Application, its merits are conceded and the [TRO] Application should be granted." (Dkt. No. 9.)

## FACTUAL BACKGROUND

Petitioner states that he is a citizen of Honduras who has resided in the United States for "over ten years." (Dkt. No. 1 at 2[1]; Dkt. No. 1-1 at 3.) Petitioner entered the United States at ten years old on or about June 8, 2014. (Dkt. No. 1-1 at 3.) Immigration authorities took Petitioner into custody, initiated removal proceedings, and released Petitioner on his own recognizance on certain conditions on June 9, 2014. (*Id.* at 3, 7.)

[1] The Court's page citations refer to the numbering provided by the Court's CM-ECF electronic filing system at the top right corner of each page.

Petitioner "is the father of two young children who are United States citizens" and "has been in a romantic relationship with a United States citizen for over six years." (*Id.* at 5.) Further, Petitioner's "romantic partner is a stay-at-home mother to their twin daughters, and he is the sole provider for his family." (*Id.*) Petitioner has also "been lawfully employed as a land surveyor for two years" and "is being trained to supervise his own crew in the future." (*Id.*)

On April 21, 2015, Petitioner filed an I-589 Application for Asylum and Withholding of Removal, and for protection under the Convention Against Torture with the Executive Office for Immigration Review. (*Id.* at 3.) On April 21, 2022, an immigration judge denied both applications. (*Id.*) Petitioner appealed the immigration judge's decision and the appeal "remains pending before the Board of Immigration Appeals." (*Id.*)

On June 2, 2022, Petitioner was arrested under California Penal Code Section 273(a) (child cruelty) and California Penal Code Section 594(b)(1) (felony vandalism). (*Id.* at 4, 14-15.) The prosecution chose not to pursue the child cruelty charge and, on March 6, 2023, Petitioner pleaded guilty to felony vandalism and received two years of formal probation, to be reduced to a misdemeanor after one year if there were no new violations. (*Id.* at 4.) On August 5, 2024, Petitioner's vandalism conviction was reduced to a misdemeanor. (*Id.* at 4, 17.)

On October 12, 2022, United States Immigration and Customs Enforcement ("ICE") ordered Petitioner to report to the ICE field office in Santa Maria, CA, and Petitioner reported as ordered. (*Id.* at 4.) ICE did not discuss Mr. Mancia Alvarez's arrest or conviction and did not schedule any future reporting dates. (*Id.*)

On March 13, 2023, the Santa Barbara County Superior Court issued Special Immigrant Juvenile Findings on Petitioner's behalf, finding that he had been abandoned by his father, and that it was not in Petitioner's best interest to return to Honduras. (*Id.*) Petitioner subsequently filed an I-360 Petition with the United States Citizenship and Immigration Services ("USCIS") on April 6, 2023. (*Id.*) On August 22, 2023, USCIS approved Petitioner's I-360 Petition and exercised its discretion to grant Petitioner deferred action such that Petitioner could not be removed from the United States while his Deferred Action was current. (*Id.*)

On October 30, 2023, Petitioner's counsel filed an I-765 Application for Employment Authorization with USCIS. (*Id.* at 4, 9.) Petitioner received his employment authorization

document on December 19, 2023, and that document plus Petitioner's deferred action "remain valid until August 22, 2027." (*Id.* at 4, 11, 12.) Petitioner's counsel anticipates that Petitioner "may be eligible to apply for Lawful Permanent Resident status within the next year." (*Id.* at 5.)

On December 16, 2024, Petitioner's counsel "filed a motion to remand and terminate removal proceedings with the Board of Immigration Appeals based on new material evidence that was not previously available, namely [Petitioner's] approved I-360 Petition with Deferred Action, which creates a pathway to legal permanent residency." (*Id.*)

On August 1, 2026, an ICE officer called Petitioner's mother and ordered Petitioner "to report for an ICE check-in at 8:00 a.m. on August 18, 2026, at the Santa Maria, California field office." (*Id.*) On August 14, 2026, Petitioner's counsel spoke with ICE Officer Aguirre at the Santa Maria field office, who informed counsel "that he had requested that USCIS terminate [Petitioner's] grant of deferred action, and that he would seek to detain [Petitioner] on August 18, 2026, should his deferred action be terminated." (*Id.*)

On August 17, 2026, Petitioner's counsel filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") and the pending TRO Application. (Dkt. Nos. 1, 3.) The Petition raises three <u>prospective</u> claims: violation of procedural due process, violation of substantive due process, and violation of the Administrative Procedure Act, which are all premised on the assumption that Petitioner's approved I-360 Petition with deferred action and his prior release from custody create a liberty interest, and that ICE will seek to re-detain Petitioner. (Dkt. No. 1 at 8-19.)

Petitioner's TRO Application requests that the Court grant a temporary restraining order and a preliminary injunction:

> prohibiting Respondents from re-detaining him unless he is afforded a pre-deprivation hearing before a neutral adjudicator to evaluate whether he is a danger to the community or a flight risk, even after consideration of alternatives to detention that could mitigate any risk of danger or flight and taking into account his ability to pay a bond.

(Dkt. No. 3 at 21.) To the extent Petitioner is re-detained, the TRO Application also requests that the Court "further enjoin Respondents from removing Petitioner from the United States or

transferring him outside of the jurisdiction of the Central District of California while this matter is pending." (*Id.*)

**LEGAL STANDARD**

Petitioner seeks prospective relief for an anticipated deprivation of his liberty. Thus, before reaching the merits of the TRO Application or the Petition, the Court first must determine whether the Petition presents an actual case or controversy under Article III, § 2 of the United States Constitution. To satisfy the case or controversy requirement, "Plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kenmna*, 523 U.S. 1, 7 (1998). Even though Petitioner was free from custody at the time the Petition was filed, following an earlier release from detention, he faces a real possibility of being re-detained without the Constitutional due process protections to which he is entitled. Thus, the Court finds that the Petition does present a live controversy and turns now to the merits of the TRO Application.

A temporary restraining order ("TRO"), like a preliminary injunction, is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standard for issuing a TRO is "substantially identical" to that for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Federal Rule of Civil Procedure 65 provides that a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b).

A party seeking a TRO must establish the following elements: (1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs. Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20). These elements, referred to as the *Winter* factors, can be balanced on a sliding scale whereby "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in

the public interest." *Id.* at 1135 (*quoting Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

The Fifth Amendment Due Process Clause provides that no person shall be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. Thus, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (citations omitted).

"In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez v. Sessions*, 872 F.3d 976, 990 (2017) (*quoting Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)). When determining what procedures are required by due process, courts weigh the three factors outlined in *Mathews v. Elridge*, 424 U.S. 319, 335 (1976) – (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest.

## DISCUSSION

For the reasons set forth below, the Court finds that Petitioner has satisfied the *Winter* factors justifying injunctive relief.

### A. Likelihood of Success on the Merits

First, the Court concludes that Petitioner is likely to succeed on the merits of his pending habeas Petition to the extent that Petitioner argues that he is entitled to a hearing prior to any re-detention.

As to the first *Mathews* factor, the private interest at stake weighs strongly in Petitioner's favor. Petitioner has allegedly lived in the United States for more than twelve years, "is the father

of two young children who are United States citizens," and "has been in a romantic relationship with a United States citizen for over six years." (Dkt. No. 1-1 at 5.) Further, Petitioner's "romantic partner is a stay-at-home mother to their twin daughters, and he is the sole provider for his family." (*Id.*) Petitioner has also "been lawfully employed as a land surveyor for two years" and "is being trained to supervise his own crew in the future." (*Id.*) Therefore, Petitioner has a significant liberty interest in remaining out of custody. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."); *see also Ortiz v. Warden*, No. 5:26-cv-03915-MAR, 2026 WL 2138601, at *3 (C.D. Cal. July 22, 2026) (finding the first *Mathews* factor to be satisfied in part "by the time [the petitioner] has lived in the United States and the connections she has made during that time."); *see also Tinoco v. Noem*, 818 F. Supp. 3d 1141, 1152 (E.D. Cal. 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

Moreover, "[t]hat Petitioner is not currently detained does not impact the analysis." *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211459, at *6 (C.D. Cal. Oct. 9, 2025). That is because "[h]abeas corpus relief is not limited to immediate release from illegal custody . . . the writ is available as well to attack future confinement and obtain future releases." *Id.* (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)).

Additionally – jumping to the third *Mathews* factor – "the government's interest in detaining Petitioner without a bond hearing is low." *Drake v. Warden*, No. 1:26-cv-02242-KES-CDB (HC), 2026 WL 1601546, at *10 (E.D. Cal. June 4, 2026); *see also R.I. v. Wofford*, No. 1:25-cv-01637-KES-SKO (HC), 2025 WL 3768205, at *7 (E.D. Cal. Dec. 31, 2025) ("[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is low.") (citation and internal quotation marks omitted); *see also Jensen v. Garland*, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) ("[T]he government's interest in detaining a noncitizen without a bond hearing is not as weighty as the petitioner's interest."); *Galdillo v. United States*, No. EDCV 21-724 JGB (KKx), 2021 WL 4839502, at *3 (C.D. Cal. May 7, 2021) (same).

Finally, as to the second *Mathews* factor, Petitioner "has also established a risk of erroneous re-detention, which a pre-deprivation hearing would guard against." *Hogarth*, 2025 WL 3211459, at *7. Specifically, Petitioner was released from custody the day after he presented himself to

authorities in 2014; although the record is unclear, it is apparent that it was previously determined that Petitioner was not a flight risk and not a danger to the public. (Dkt. No. 1-1 at 7.) In addition, Petitioner has sufficiently shown there is a risk that ICE will re-arrest and re-incarcerate Petitioner at one of his upcoming check-ins, if they did not already detain him at his August 18, 2026 check-in. (Dkt. No. 1-1 at 5); *see also Hogarth*, 2025 WL 3211459, at *7 (quoting *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) ("The risk of erroneous deprivation of this interest is high, as ICE takes the position that it may revoke a release determination at any time without either a hearing before or additional oversight from a neutral adjudicator.")).

For the foregoing reasons, the Court finds that the *Mathews* factors are satisfied such that Petitioner's likelihood of success on the merits of his pending Petition is high, which in turn satisfies the first *Winter* factor for injunctive relief. *Wells Fargo & Co.*, 758 F.3d at 1071; *Winter*, 555 U.S. at 20.

### B. Likelihood of Irreparable Harm

As to the second *Winter* factor, "Petitioner has shown that absent injunctive relief, he will suffer irreparable injury if he is arrested again and detained without a hearing." *Hogarth*, 2025 WL 3211459, at *7. "The deprivation of constitutional rights unquestionably constitutes irreparable injury," including those "imposed on anyone subject to immigration detention." *Id.* (quoting *Hernandez*, 872 F.3d at 995). Indeed, "[n]ot only would Petitioner be deprived of due process under the Fifth Amendment absent injunctive relief, but the members of his family would also suffer from the loss of his income and emotional support." *Id.* Under these circumstances, the Court readily finds that the second *Winter* factor is satisfied. *Id.*; *Hernandez*, 872 F.3d at 995; *Winter*, 555 U.S. at 20.

### C. Balance of Equities and Public Interest

"The final two *Winter* factors 'merge when the Government is the opposing party.'" *Martinez v. Noem*, 821 F. Supp. 3d 1183, 1195 (C.D. Cal. 2026). Furthermore, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights" and "[t]he government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Hogarth*, 2025 WL 3211459, at *7 (quoting *Baird v. Bonta*, 81

F.4th 1036, 1042 (9th Cir. 2023)). In this case, "because Petitioner has demonstrated a likelihood of success on [his] constitutional claims, the balance of equities and public interest 'tip[ ] sharply' in [his] favor." *Martinez*, 821 F. Supp. 3d at 1195 (citation omitted). Therefore, the third and fourth *Winter* factors also weigh in Petitioner's favor.

## ORDER

Because Petitioner has established that preliminary relief is warranted pending the outcome of his pending habeas Petition, his TRO Application [Dkt. No. 3] is **GRANTED**. Respondents are ENJOINED from detaining Petitioner pending further order of this Court. To the extent Petitioner was already re-detained at his August 18, 2026 check-in, Respondents are ENJOINED from removing Petitioner from the United States or transferring him outside of the jurisdiction of the Central District of California while this matter is pending.

**IT IS SO ORDERED.**

:

**Initials of Preparer** klh